UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ISIAH TAYLOR, III,

                        Plaintiff,

v.                                                        Case No. 22-cv-459-pp

MICHELLE SCHMUDE REYNOLDS,
DONALD REYNOLDS,
and UNCAGED MINDS PUBLISHING,

                        Defendants.

**ORDER DENYING AS MOOT PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 4) AND DIRECTING US MARSHALS SERVICE TO SERVE COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 4**

       Isiah Taylor, III, who is confined at Gilmer Federal Correctional Institution in Glenville, West Virginia and who is representing himself, has filed a civil case alleging that the defendants breached a contract he had with them to publish a book. Dkt. No. 1. The plaintiff also has filed a motion for leave to proceed without prepaying the filing fee. Dkt. No. 4. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 4, and orders the United States Marshals Service to serve the complaint on the defendants.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 4)**

       The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case

1

without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On May 2, 2022, the court ordered the plaintiff to pay an initial partial filing fee of $35.10. Dkt. No. 6. The court received $50.00 on June 13, 2022. On September 6, 2022, the clerk's office noted on the docket that the plaintiff had paid the filing fee in full. Dkt. No. 10. The court will deny as moot the plaintiff's motion for leave to proceed without prepaying the filing fee.

## II. Review of the Complaint

When an incarcerated person "seeks redress from a governmental entity or officer or employee of a governmental entity," the PLRA requires the court to review the complaint, and to dismiss it if it is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. §1915A. The plaintiff has not sued governmental employees or entities; he has sued a publishing company and employees of that company. That means that §1915A does not apply. In cases where an incarcerated person asks permission to proceed without prepaying the filing fee, the PLRA requires the court to dismiss the case if the plaintiff's allegations of indigence prove to be false, or if the case is frivolous or malicious, fails to state a claim for which relief may be granted or seeks monetary relief against a defendant who is immune. 28 U.S.C. §1915. Although the plaintiff *did* ask permission to proceed without prepaying the

2

filing fee, he subsequently paid the fee in full and the court has denied that motion as moot. It is not clear whether §1915(e) applies.

The court will summarize the allegations in the complaint, flag a potential jurisdictional issue and direct the United States Marshals Service to serve the complaint on the defendants.

A. The Plaintiff's Allegations

The plaintiff alleges that in July 2021, after seeing an ad in a magazine and speaking with another incarcerated person at his facility, he reached out to defendant Uncaged Minds Publishing about publishing a book he had written. Dkt. No. 1 at 1-2. He says that the book, titled "Heart Break Ho-Tail," is about a personal relationship he had with a woman. Id. at 1. The plaintiff alleges that he communicated with defendant Michelle Reynolds via letters and emails about publishing the book. Id. He allegedly received a contract from Ms. Reynolds, and the plaintiff had his mother mail his manuscript to Uncaged Minds Publishing, P.O. Box 436, Green Bay, Wisconsin, 54305. Id.

The plaintiff states that in October 2021, he signed and returned Uncaged Minds' publishing contract followed by four checks of $250, for a total of $1000. Id. He says that in a September 21, 2021 email Reynolds responded that she would let the plaintiff know when the payment had arrived. Id. The plaintiff indicates that "[w]ith respect to the downtime the world faced due to Covid-19, from Oct. 2021, a number of letter's and e-mails went out to Ms. Michelle Reynolds, and Uncaged Minds Publishing requiring the status of the receiving of the mannuscript, [sic] the $1,000.00 and status on how the

publishing of the book was coming . . . ." Id. at 2-3. The plaintiff alleges that as of April 2022 (when he filed his complaint), he had not heard from Uncaged Minds Publishing or from Ms. Reynolds. Id. at 2, 3.

According to the plaintiff, once the last of the four checks "left [his] inmate acct.," Ms. Reynolds ended communication and removed the company's phone number and email address from the website. Id. at 3. At that point, all the plaintiff had was a post office box address; the plaintiff says he continued to write to that address with no response. Id. The plaintiff explains that his institution has provided him evidence that the four checks he sent were received and cashed. Id.

The plaintiff says that the publishing company's contract allegedly states that it will publish a book 120 days after receiving full payment, if there was no delay by the author. Id. at 4. The plaintiff states that he did not delay, and the company did not offer a first proof reading of his book and he has not seen the book cover. Id. The plaintiff identifies another incarcerated person who he says also entered into an agreement with Reynolds and Uncaged Minds; he says that this individual lost $4,000 and several books that the individual is trying to retrieve. Id. The plaintiff believes that Reynolds and the publishing company are frauds and are targeting incarcerated persons. Id. He says the magazine in which he saw the ad has provided no help in locating Reynolds. Id. at 4-5.

The plaintiff says that Ms. Reynolds and Uncaged Minds Publishing are past the 120-day deadline and show no signs of honoring their contract; he asks the court to provide him with a lawyer to help move his case forward. Id.

4

at 5. He says he has contacted a "handful" of legal aid organizations, but all of them advised him to file the lawsuit on his own due to limited resources. Id. at 3. He states that as he was preparing the complaint, he learned that defendant Donald Reynolds, who is confined at F.C.I. Beckley Prison, is the actual owner of Uncaged Minds Publishing and that he allows Ms. Reynolds to act as the spokesperson for the company. Id. at 7. The plaintiff says that there has been at least one other lawsuit filed against the defendants by someone incarcerated at F.C.I. Allenwood, citing Wiggins v. Reynolds, Case No. 2:2021CV01488 filed on December 30, 2021. Id.

For relief, the plaintiff seeks, (1) return of his manuscript and $1,000; (2) if the manuscript is lost, $100,000; and (3) to honor the contract by publishing "Heart Break Ho-Tail." Id. at 5.

B. Discussion

As stated above, it is not clear that the court has the authority to screen the complaint under the PLRA (28 U.S.C. §1915A) or the *in forma pauperis* statute (28 U.S.C. §1915). So even if the complaint fails to state a claim for which a federal court may grant relief, it is not clear that the court has the authority to dismiss it on that ground at this stage. But "[t]he federal courts are courts of limited jurisdiction, and . . . have an obligation at each state of the proceedings to ensure that [they] have subject matter jurisdiction over the dispute." Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc., 707 F.3d 883, 890 (7th Cir. 2013). If a federal court does not have subject matter jurisdiction, it must dismiss a case. See, *e.g.*, United States v. Furando,

5

40 F.4th 567, 576 (7th Cir. 2022). See also, Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). That said, the Seventh Circuit "generally discourage[s] district courts from *sua sponte* dismissing a complaint for lack of subject matter jurisdiction without first providing the plaintiff notice and hearing or an opportunity to amend. Such a dismissal is improper unless the jurisdictional defect is incurable." Id. (quoting George v. Islamic Rep. of Iran, 63 Fed. App'x 91, 918 (7th Cir. 2003)). By this order, the court gives the plaintiff notice that the court may lack subject matter jurisdiction over his claims.

There are limits on the kinds of cases that a federal court may consider. It can consider and decide cases that involve violations of *federal* laws or the *federal* Constitution. 28 U.S.C. §1331. Federal courts also can consider and decide lawsuits between citizens of different states, if the amount of money in dispute is more than $75,000. 28 U.S.C. §1332. Federal courts cannot consider and decide lawsuits that involve alleged violations of state law, unless the plaintiff and the defendant live in two different states, or unless the state-law claims relate to a federal claim.

The plaintiff alleges that the defendants have breached a contract and have committed fraud, which are state law claims. For the court to have jurisdiction to hear this dispute, the plaintiff must be a citizen of a different state than all the defendants and the amount in controversy must exceed $75,000. 28 U.S.C. §1332(a).

6

The plaintiff says that he is confined at FCI Gilmer, which is in Glenville, West Virginia. The plaintiff states that Donald Reynolds is confined at FCI Beckley, which is in Beaver, West Virgnia, and the Federal Bureau of Prisons inmate locater website shows that there is a Donald M. Reynolds, #12695-021, confined at Beckley, with a projected release date of July 9, 2037. See bop.gov/inmateloc/ (last visited Sept. 16, 2022). It appears, therefore, that the plaintiff and Donald Reynolds live in the same state.

"For purposes of diversity jurisdiction, citizenship differs from residence." Myrick v. Wellpoint, Inc., 764 F.3d 662, 664 (7th Cir. 2014). For an individual, "[c]itizenship means domicile (the person's long-term plan for a state of habitation) rather than just current residence." Id. "[I]ncarceration in a state does not make one a citizen of that state." Bontkowski v. Smith, 305 F.3d 757, 763 (7th Cir. 2002). "A prisoner is a citizen of 'the state of which he was a citizen before he was sente to prison unless he plans to live elsewhere when he gets out, in which event it should be that state.'" Id. (quoting Singletary v. Continental Ill. Nat'l Bank & Trust Co., 9 F.3d 1236, 1238 (7th Cir. 1993)). The plaintiff has not identified his last state of residence before he was incarcerated, nor has he identified Donald Taylor's last state of residence before *he* was incarcerated. The plaintiff has not identified the citizenship of Ms. Reynolds.

The plaintiff provides a post office box in Green Bay, Wisconsin for the address of Uncaged Minds Publishing. This does not establish the citizenship of the publishing company. The citizenship of a business entity depends on the

nature of the organization. A corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. §1332(c)(1). A limited liability company (LLC) has the citizenship of each of its members. Thomas v. Guardsmark, 487 F.3d 531, 534 (7th Cir. 2007). The plaintiff has not alleged whether Uncaged Minds is corporation or a limited liability company (or some other entity), nor has he alleged any fact that would establish its citizenship.

Regarding the amount in controversy, the plaintiff states that he seeks the $1,000 he paid Ms. Reynolds and he also seeks $100,000 if the manuscript is lost. The plaintiff appears to explain the latter amount by stating that "$7.00 per copy would have been paid." Dkt. No. 1 at 5. Whether the amount in controversy exceeds $75,000 is a prediction, not a fact. See Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d 536, 541 (7th Cir. 2006). Dismissal is appropriate only if "it is legally certain that the controversy is worth less than the jurisdictional amount." Id. at 542.

At this point, the court cannot definitively determine that it lacks subject matter jurisdiction. Once the defendants have been served, the parties must address whether the court has subject matter jurisdiction.[1]

---

[1] In his complaint, the plaintiff references another case in which an inmate filed a complaint against Uncaged Minds Publishing and Michelle Reynolds for failing to publish a manuscript. Dkt. No. 1 at 7. In that case, which was subject to review under 28 U.S.C. §1915, Magistrate Judge William E. Duffin required the plaintiff to file an amended complaint because he had not plausibly alleged that the court had subject matter jurisdiction. See Wiggins v. Reynolds, Case No. 21-cv-1488-WED, Dkt. No. 13 at 6-7. (E.D. Wis. April 7, 2022). The incarcerated plaintiff filed an amended complaint, dkt. no. 14, and, based on review of the pleading, Judge Duffin determined that the plaintiff had

The complaint asks the court to appoint counsel for the plaintiff. In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Authority, 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To demonstrate he satisfied the first prong, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the

---

sufficiently alleged that the court had jurisdiction under 28 U.S.C. §1332, dkt. no. 15. Because the complaint in this case is not subject to review under §1915, the court will allow the complaint to proceed instead of requiring the plaintiff to file an amended complaint.

9

lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff indicated in the compliant that he had contacted several legal aid organizations for help. He attached to the complaint a form letter from the Frank J. Remington Center at the University of Wisconsin Law School, indicating that it could not assist incarcerated persons who were incarcerated

outside of the state of Wisconsin. Dkt. No. 1-2 at 13. He attached a letter from Legal Action of Wisconsin (dated December 20, 201) indicating that that organization was unable to assist him. Id. at 15. He attached a second letter from Legal Action of Wisconsin (dated January 25, 2022) again indicating that that organization could not assist him. Id. at 17. The plaintiff has satisfied the first requirement for eligibility for appointed counsel; he has made reasonable efforts to find a lawyer on his own.

But the plaintiff has not satisfied the second requirement. The only reason he gives for seeking appointment of a lawyer is that having a lawyer would "aid [him] moving forward with the matter at hand." Dkt. No. 1 at 5. The plaintiff's claim is straightforward. His complaint is clear, articulate, easy to read and easy for the court to understand. He has managed to collect significant information about his claims, despite the fact that he is incarcerated. The plaintiff has not alleged that that he cannot read or write (quite the contrary—he alleges that he is an author). He has not alleged that he is mentally ill. He has not alleged that there is some reason that he cannot represent himself, at least at this early stage of the case.

The next step in the process is for the U.S. Marshals Service to try to serve the complaint on the defendants. Once the defendants have been served, they must respond to the complaint. There is nothing that the plaintiff needs to do at this stage, and nothing for a lawyer to assist him with.

The court will deny without prejudice the plaintiff's request for counsel. This means that if it turns out the court has subject matter jurisdiction and if

11

the case later becomes too complex for the plaintiff to navigate himself, he may renew his request (and state cause for why he needs appointed counsel).

### III. Conclusion

The court **DENIES AS MOOT** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 4.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on defendants Michelle Schmude Reynolds, Donald Reynolds and Uncaged Minds Publishing under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendants Michelle Schmude Reynolds, Donald Reynolds and Uncaged Minds Publishing to file a responsive pleading to the complaint.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that the plaintiff must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin, this 29th day of October, 2022.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**